# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

**JIMMY L. ROHN,**

    **Plaintiff,**

**v.**                                     **CASE NO. 5:12-cv-139-RS-EMT**

**WYNDHAM VACATION REORTS, INC.,**

    **Defendant.**

_____/

## ORDER

Before me are Defendant's Motion for Summary Judgment (Doc. 55) and Plaintiff's Response (Doc. 63).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' " *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff was born on August 26, 1946. He began working for Defendant's predecessor, Fairfield, on January 30, 1998. Defendant bought Fairfield, and Plaintiff began working for Defendant around 2002. Defendant sells time share vacation properties. Plaintiff was employed as a Senior Sales Manager for in-house sales at Defendant's resort property in Destin, Florida. The other sales

manager in Destin was Roger Smith, but Plaintiff was a more highly ranked manager. (Doc. 55-1, p. 70; Doc. 55-2, p. 20). Plaintiff's boss was Nick Kokolis, Vice President of Sales in Destin. (Doc. 55-1, p. 48). Kokolis reported to Wilson Moore, Executive Vice President of South Business Unit. (Doc. 55-2, p. 8).

### *New Orleans Trip and Termination*

When Defendant learned of an in-house sales manager position opening up in New Orleans, Louisiana, he arranged to conduct a sales training session to see if he wished to pursue employment there. (Doc. 55-1, p. 73-74). Defendant brought his forty-year old son, Jamie,[1] to New Orleans on January 13, 2011, and checked into a one-bedroom suite at La Belle Maison Resort that Wyndham provided. He was only required to pay for housekeeping and valet parking from his personal funds. (Doc. 55-1, p. 82-83). When Plaintiff checked in, he agreed to pay a few of $250 if there was smoking in the room and also accepted responsibility for any damage to the unit. (Doc. 55-1, p. 2; Doc. 65-1, p. 110).

Plaintiff contends that after checking in, he met with the manager and then played cards with Jamie at the casino for a few hours. He says that he returned to La Belle Maison around 8:00 p.m. and was in bed by 8:30 or 9:00 p.m. (Doc. 55-1, p. 84-87). Plaintiff testified that he was sleeping when he awoke to loud music playing in the common area of the suite. *Id.* Jamie had brought back two women,

---

[1] Because Defendant and his son share the same last name, Jamie Rohn will be referred to as Jamie.

and they were all visibly intoxicated. *Id.* Jamie contends that he knew one of the women on the website plentyoffish.com and the other was her sister. (Doc. 55-3). Plaintiff asked them to leave. (Doc. 55-1, p. 87-89).

Jamie asked Plaintiff for cab fare for the women to go home because it was forty degrees outside. *Id.* Plaintiff then went down to the lobby with one of the women to use the ATM, but he was unable to withdraw any money because he reached his daily limit at the casino. *Id.* Plaintiff then went back to sleep, believing that the women left shortly after. *Id.* at 89-94. The next morning, Jamie was sleeping on the sofa. Jamie said he would clean the room while Plaintiff gave his presentation, which lasted an hour and a half. *Id.* at 93-94, 96. Plaintiff met Jamie in the lobby and never inspected the room before leaving. *Id.* at 111-12.

Wyndham employees observed Jamie bringing back two females and Plaintiff bringing one of them to the ATM. Both the front desk clerk and the bell clerk thought that the two women resembled prostitutes. (Doc. 55-5, p. 60, 66-67). After Plaintiff and his son checked out, housekeeping discovered damage to the room. (Doc. 55-1, p. 101-10). The bi-fold door in the main suite was loose on its tracks and fell off its hinges. (Doc. 55-8). The door contained two grapefruit-sized holes. *Id.* Engineering believed that someone had attempted to fix the door with the security screws that were removed from the window. *Id.* The screws kept the window from opening. *Id.* The housekeeper also found cigarette ashes on the

entertainment center. *Id.* Plaintiff testified that he did not know people were smoking in the room, but Jamie testified that the room was filled with smoke. (Doc. 55-1, p. 98, 152; Doc. 55-3, p. 152, 166).

Roger Smith, the other sales manager, testified that Plaintiff told him about his trip to New Orleans. He said that Plaintiff told him and other co-workers that:

> [H]e was in the room by hisself, and then his son come in with a couple of hookers. Any they went to partying, and, you know, they jumped on the bed with him, and you know, and then a couple things was said, I suppose.
> And then only thing really said about it, they partied, partied, partied, at one point they had to go get some more booze. And [Plaintiff] said, I had to go down and find an ATM and go get some booze.

(Doc. 55-9).

After seeing the damage to the room, Piccininni, the assistant manager at the La Belle Maison, wrote an e-mail to her superiors about the damage in the room. (Doc. 65-1, p. 119). This email was forwarded to Kokolis, who informed Moore.

A few days after returning from New Orleans, Kokolis contacted Plaintiff to warn him about a pending investigation. (Doc. 55-1, p. 129). Plaintiff alleges that all of the damage and smoking happened while he was at the ATM, which he estimated to take about ten or fifteen minutes. *Id.* at 91-92, 130. Plaintiff was charged $650 by La Belle Maison—$250 for smoking and $400 for damage to the door. After he was notified of the pending investigation, Plaintiff approached Cheryl Koralewski, the human resources representative at the Destin resort; told

his version of what happened in New Orleans; and made his first allegation of age discrimination. *Id.* at 129, 139, 182-84; Doc. 55-11.

Koralewski reported Plaintiff's statement to her supervisor, Laurie Denton, the Human Resources Manager. (Doc. 55-12, p. 37). Denton met with Plaintiff later that day, and Plaintiff recounted his story, admitting that there was smoking n the room and that there was damage which he failed to report. *Id.* at 37-38. Justice, another HR official, sent to email to Moore, Kokolis, and others advising them that they should not make a decision about Plaintiff's termination until the security video was reviewed. (Doc. 64, p. 20). Denton gathered evidence from the La Belle Maison staff, including a security video of the lobby. (Doc. 55-12, p. 53-54, 66). The video was recorded and maintained by Valor Security, not Wyndham. *Id.* at 66. The tape Wyndham received was incomplete, lasting only a few minutes, and did not show any inappropriate behavior. *Id.* at 54; Doc. 55-5, p. 62.

After considering the damage, Plaintiff's failure to report the damage, and Smith's report of Plaintiff partying with hookers, Wyndham management concluded that Plaintiff had engaged in serious misconduct. (Doc. 55, p. 9). Wyndham did not believe Plaintiff's version of the events. *Id.* Denton recommended Plaintiff's termination, and Moore accepted the recommendation and terminated Plaintiff on January 24, 2011. (Doc. 55-12, p. 48-49; Doc. 55-2, p. 44-45).

Moore claims that he was solely responsible for the decision to terminate Plaintiff (Doc. 55-2, p. 44-45). Defendant argues that Kokolis was not a decision-maker, but was merely kept in the loop because Plaintiff worked for him. *Id.* at 73-74. Kokolis was on the conference call when Moore decided to terminate Plaintiff, but Kokolis admits that he had no decision-making authority. (Doc. 55-13, p. 86). In fact, he testified that he argued against Plaintiff's termination and wanted him suspended without pay or some lesser punishment. *Id.* at 86-87. However, Plaintiff contends that there was a decision-making team that consisted of Moore, Kokolis, Koralewski, Justice, and Denton.

Additionally, Defendant says that it promoted Smith, who is only a year younger than Plaintiff, to the position of Senior Sales Manager, replacing Plaintiff. (Doc. 55-12, p. 71). Plaintiff argues that Brandon Prince was hired as his replacement because he was doing Plaintiff's duties although he had a different title. Prince transferred to Destin from Las Vegas, Nevada, in July of 2011, six months after Plaintiff's termination. In Destin, he was responsible for both in-house and frontline sales and supervised Smith. (Doc. 55-19). In April 2012, Prince transferred to Orlando, Florida. *Id.* Defendant admits that Prince briefly managed in-house sales employees in Destin, but maintains that he occupied a new position and performed other tasks that Plaintiff did not.

*Alleged Age Discrimination*

Once Plaintiff knew of the investigation into the incident in New Orleans, he made a claim of age discrimination to Human Resources. He alleged that Kokolis referred to him as an "old dinosaur" and "over the hill." On his birthday card, Kokolis wrote, "Happy birthday, you old Billygoat." *Id.* at 40-41, 141-143. A Wyndham employee, Lisa Hebert, testified that she heard Kokolis make statements like "old fart," "old man," and "out with the old, in with the new." (Doc. 65-1, p. 11-12). She also testified that she heard Kokolis say that Plaintiff "was too old to learn the computer" *Id.* at 15-16.

Plaintiff also alleges that higher-ranking Wyndham officials demonstrated an age bias. When Plaintiff has to hire people, he testified that Moore told him to go after the younger people because they had "the eye of the tiger." (Doc. 55-1, p. 61). Additionally, in late 2010, Kokolis attended a summit meeting of the Wyndham Vice Presidents, and the corporate philosophy was "out with the old, in with the new." (Doc. 55-13).

Although Plaintiff disputes that Kokolis is his friend,[2] it is undisputed that there were times when they would drink beer together, shoot pool together, and on one occasion, they smoked marijuana together. (Doc. 55-1, p. 21-23). Kokolis testified that they even got together to drink and shoot pool after Plaintiff was

---

[2] Kokolis testified that they were "like brothers." Doc. 55-13, p. 124.

8

terminated and that Plaintiff offered to pay money to "play ball" and "play along" with the age discrimination claim. (Doc. 55-13, p. 148). Kokolis asked Plaintiff about the age discrimination claim and testified that Plaintiff said, "I know I fucked up. I should have tried something else." *Id.*

Additionally, Defendant contends that the "out with the hold and in with the new" philosophy referred to new and innovative business ideas and processes and was not a policy against older employees. *Id.* at 157-58.

### III. ANALYSIS

Plaintiff's one count is for age discrimination under the ADEA for his termination. Because there is no direct evidence, Plaintiff must establish the following elements for a prima facie case of age discrimination: (1) he was over forty, (2) he was subjected to an adverse employment action, (3) he was qualified to do the job, and (4) the adverse employment action arose under circumstances give rise to an inference of discrimination, such as being replaced by a materially younger person. *Damon v. Fleming Supermarkets of Fla. Inc.*, 196 F.3d 1354, 1389 (11th Cir. 1999). If Plaintiff establishes a prima facie case, then the burden shifts to Defendant to proffer a non-discriminatory reason for Plaintiff's termination. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). Plaintiff can then prove that the Defendant's reasons were pretexual and that the real reason for his termination was age discrimination. *Id.*

The only prong that is at issue is the last one. Defendant argues that Plaintiff cannot prove that his termination was a result of age discrimination because Plaintiff, 65, was replaced by Smith, 64. Plaintiff contends that Prince, 40, was his replacement. However, the record is unclear as to who replaced Plaintiff. Kokolis, who supervised the managers, testified that Prince did not assume the duties and that Smith remained in his role as a regular manager. (Doc. 65-1, p. 113-14). Kokolis took a leave of absence in January 2011 after Plaintiff was terminated, and interviews were still being conducted for the position when Kokolis returned from leave. *Id.* Kokolis also testified that Smith's job duties may have increased, but it was far from saying that he replaced Plaintiff. *Id.* Without sufficient evidence to make a determination about who was Plaintiff's replacement, this factor goes in favor of Plaintiff because all reasonable doubts must be resolved in favor of the non-movant. *Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008).

The burden now shifts to Defendant to provide a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant claims that it terminated Plaintiff for the misconduct in New Orleans. Defendant's Business Principles, codified in Business Principles: A Code of Conduct for Employees, states:

> In all cases, the Company will decide what disciplinary action is appropriate, and whether to impose discipline. Examples of more serious conduct warranting immediate termination include, but are not limited to, the following: . . .

> Dishonesty or misrepresentation;
> …
> Indecent or inappropriate conduct in the workplace or at a Company-related business meeting or function."

(Doc. 55-14, p. 9). Additionally, the Employee Policy Handbook identifies more acts of misconduct that may result in immediate termination. (Doc. 55-15, p. 3-4). This misconduct includes: (i) violating the business principals identified above, (ii) illegal activities, (iii) failure to comply with any state, federal, or local law requirement, (iv) failure to report policy violations, (v) misuse of company property, (vi) destruction of company facilities, and (vii) inappropriate conduct that detracts from Wyndham's reputation. *Id.*

Plaintiff does not dispute that there was damage to the room. He also admits that he is responsible for any damage that is caused. Jamie and the housekeepers confirmed that there was smoking in the room, which was against the resort's policies. Additionally, Defendant contends that it had a reasonable, good faith belief that Plaintiff and his son were entertaining prostitutes. These acts violate Defendant's employment policies and have nothing to do with Plaintiff's age. Therefore, Defendant has satisfied its burden of showing a legitimate, non-discriminatory reason for Plaintiff's termination.

"[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. Cnty. Com'n of Jefferson Cnty, Ala.,* 446 F.3d 1160,

1163 (11th Cir. 2006)(quoting *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1228 (11th Cir. 1993)). "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.' " *Id.* (quoting *St. Mary's Honor Ctr. v Hicks,* 509 U.S. 502, 515 (1993)).

Defendant does not need to prove that Plaintiff actually did the conduct attributed to him. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)(if an employer acts on an honestly held belief that an employee had engaged in misconduct, there is no discrimination even if that belief was ultimately mistaken). Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008).

> [F]ederal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation for its behavior."

*Chapman*, 229 F.3d at 1030.

There is overwhelming evidence, including Plaintiff's and Jamie's admissions, that they damaged the room and Jamie smoked in it. Plaintiff admits that according to the company's policies, this conduct could lead to his

12

termination. Additionally, Defendant relied on statements from employees at the La Bella Maison in New Orleans for the belief that the women in the suite were prostitutes. Again, this belief does not have to be proved true for it to be a legitimate reason for termination. *See Elrod*, 939 F.2d at 1470. Plaintiff does not offer any evidence that Defendant's proffered reasons are unworthy of credence. Defendant's arguments that the punishment was too severe, that other employees were not terminated for allegedly similar conduct, and that Kokolis made ageist comments to him do not bring the honesty of Defendant's reasons into question.

First, I will not comment as to the fairness of the punishment as that is not within the purview of the Court to examine. *See Chapman*, 229 F.3d at 1030. Second, Plaintiff did not offer a comparator that was similarly situated "in all relevant respects." *Rioux v. City of Atlanta*, *Ga.*, 520 F.3d 1269, 1279-80 (11th Cir. 2008)(the "quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").

Lastly, the record shows that Kokolis was not the decision-maker. "[S]tatements by non-decision-makers, or statements by decision-makers unrelated to the decisional process" do not satisfy a plaintiff's burden of proving pretext. *Steger v. General Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003). Both Kokolis and Moore testified that Moore was the sole decision-maker. HR handled the

investigation, and Kokolis was kept informed of HR's findings, but Moore made the ultimate determination regarding Plaintiff's employment.

Because Plaintiff cannot show that Defendant's proffered reasons for his termination were *both* dishonest and that there was discrimination by the decision-maker, he does not meet his burden of proving pretext.

## IV. CONCLUSION

1. Defendant's Motion for Summary Judgment (Doc. 55) is **GRANTED**.

2. All pending motions are **DENIED as moot**.

3. The Clerk is directed to close the case.

**ORDERED** on February 13, 2013.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**